# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES HOFFMAN and CHERYL HOFFMAN, h/w, | : : : | No. 4:15-CV-01828 |
| Plaintiffs, | : : : | (Judge Brann) |
| v. | : : | |
| CHAMPION POWER EQUIPMENT, INC., | : : : | |
| Defendant. | : : | |

## MEMORANDUM OPINION

### JUNE 21, 2017

Plaintiffs James and Cheryl Hoffman, husband and wife, filed this products liability action when one of Defendant's generators allegedly malfunctioned and caused a substantial house fire. Defendant moved for summary judgment as to certain of Plaintiffs' theories of recovery. Consistent with the following discussion, that motion is granted.

**I.     BACKGROUND**

Beginning on September 3, 2013 and continuing until September 5, 2013, Plaintiffs used a Champion generator to power their Coal Township, Northumberland County home. On September 5, the Plaintiffs' home, which was insured by Erie Insurance Company, caught fire and was destroyed.

A subsequent fire marshal's investigation by the Pennsylvania State Police concluded that the fire must have been the result of the generator or the homeowners' intentional acts. According to Mr. Hoffman, he was asleep in the home at the time while his wife was away. Nevertheless, after the fire was reported to the appropriate claims adjuster, Plaintiffs contend that an inordinate focus was placed on the possibility of arson, and they therefore required the assistance of their counsel, Dean F. Piermattei, Esquire, to secure payment on the policy.

Erie concluded its investigation and paid Plaintiffs' claim in early April 2014. The settlement was comprised of $169,120.78 to cover the loss of Plaintiffs' residence; $121,582.00 to replace Plaintiffs' personal property; and $8,144.00 for demolition and debris removal. Of the $276,297.39 ultimately paid to the Plaintiffs by Erie, Plaintiffs' counsel retained $101,108.00, which sum represents 33 1/3% of the entire insurance proceeds.

In May 2015, Plaintiffs filed this action, which alleges that Champion's generator was responsible for the fire and which seeks a variety of damages. Champion filed the instant motion for summary judgment. That motion is now granted.

## II. LAW

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be

interpreted in a way that allows it to accomplish this purpose."[1] Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] "Facts that could alter the outcome are 'material facts,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[3]

"A defendant meets this standard when there is an absence of evidence that rationally supports the plaintiff's case."[4] "A plaintiff, on the other hand, must point to admissible evidence that would be sufficient to show all elements of a *prima facie* case under applicable substantive law."[5]

"[T]he inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits."[6] Thus, "[i]f the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not

---

[1] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

[2] Fed. R. Civ. P. 56(a).

[3] *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993) (Hutchinson, J.) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) and *Celotex Corp.*, 477 U.S. at 322).

[4] *Clark*, 9 F.3d at 326.

[5] *Id.*

[6] *Liberty Lobby, Inc.*, 477 U.S. at 252.

whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented."[7] "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."[8] "The judge's inquiry, therefore, unavoidably asks . . . 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'"[9] Summary judgment therefore is "where the rubber meets the road" for a plaintiff, as the evidentiary record at trial, by rule, will typically never surpass that which was compiled during the course of discovery.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."[10] "[R]egardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates

---

[7] *Id.*

[8] *Id.*

[9] *Id.* (quoting *Schuylkill & Dauphin Imp. Co. v. Munson*, 81 U.S. 442, 447 (1871)).

[10] *Celotex Corp.*, 477 U.S. at 323 (internal quotations omitted).

that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."[11]

Where the movant properly supports his motion, the nonmoving party, to avoid summary judgment, must answer by setting forth "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[12] For movants and nonmovants alike, the assertion "that a fact cannot be or is genuinely disputed" must be supported by: (i) "citing to particular parts of materials in the record" that go beyond "mere allegations"; (ii) "showing that the materials cited do not establish the absence or presence of a genuine dispute"; or (iii) "showing . . . that an adverse party cannot produce admissible evidence to support the fact."[13]

"When opposing summary judgment, the non-movant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'"[14] Moreover, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact

---

[11] *Id.*

[12] *Liberty Lobby, Inc.*, 477 U.S. at 250.

[13] Fed. R. Civ. P. 56(c)(1).

[14] *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2003) (Weis, J.).

undisputed for purposes of the motion."[15] On motion for summary judgment, "[t]he court need consider only the cited materials, but it may consider other materials in the record."[16]

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."[17] "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[18] "If the evidence is merely colorable . . . or is not significantly probative, summary judgment may be granted."[19]

## III. ANALYSIS

### A. Plaintiffs May Not Recover From Champion Those Fees And Costs Incurred In Connection To Their Dispute With Erie.

Plaintiffs seek to require Champion to pay for their attorney's fees, expert fees, and the attendant costs incurred as a consequence of their dispute with their insurer, Erie. The law does not support that request.

---

[15] Fed. R. Civ. P. 56(e)(2).

[16] Fed. R. Civ. P. 56(c)(3).

[17] *Liberty Lobby, Inc.*, 477 U.S. at 249.

[18] *Id.*

[19] *Id.* at 249–50 (internal citations omitted).

"The general policy is that attorney's fees should be awarded 'in limited circumstances' absent a fee-shifting statute or contract."[20] One recognized exception to the American Rule is found at the Restatement (Second) of Torts § 914(2), entitled "Expense of Litigation." Section 914(2) provides that:

> One who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for loss of time, attorney fees and other expenditures thereby suffered or incurred in the earlier action.

"Recovery under the third-party litigation rule is the exception and is permitted only when a party is sued solely because of the tortious conduct of a third party."[21] "There is no doubt that § 914(2) . . . should be applied narrowly, otherwise, the exception would swallow the rule."[22] Thus, a court must decide whether the matter *sub judice* is the "exceptional case that falls within the purpose of § 914(2)" or whether the American Rule endures.[23]

The United States Court of Appeals for the Third Circuit and lower courts within its vicinage have noted that even absent express adoption, the Supreme

---

[20] *Polonski v. Trump Taj Mahal Assocs.*, 137 F.3d 139, 146 (3d Cir. 1998) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 257 (1975)).

[21] *Marshall Investments Corp. v. Krones A.G.*, 572 F. App'x 149, 153 (3d Cir. 2014).

[22] *Marshall Investments Corp. v. Krones, Inc.*, 2013 WL 1962671, at *3 (W.D. Pa. May 10, 2013) (Ambrose, J.), *aff'd sub nom. Marshall Investments*, 572 F. App'x at 149.

[23] *Marshall Investments*, 2013 WL 1962671, at *3.

Court of Pennsylvania has "favorably cited" § 914(2).[24] That Section's application, though somewhat ill-defined in the pertinent case law, has typically been reserved to transfer fees and costs expended by an indemnitee when it defends against a third-party action. In other words, it has primarily been recognized in cases where the claimant is "defending"—rather than "bringing" an action, to use § 914(2)'s own words.

By way of illustration, § 914(2) has been invoked by a boiler suppler as against one of its parts manufacturers to recover fees and costs incurred in a lawsuit brought by the estate of a man who was killed when one of the supplier's boilers exploded.[25] In such circumstances, the Third Circuit has noted that the indemnitee's right to recover fees and costs under § 914(2) in a later direct action against the indemnitor is "limited" to those fees and costs "incurred in the underlying defense litigation."[26]

Offensive use of § 914(2) is not equally established in the courts of this Commonwealth. In fact, in 2011, the United States District Court for the Eastern District of Pennsylvania, in a case in which one party was "relying on the second-articulated application involving the plaintiff instituting a suit against a third-

---

[24] *Fleck v. KDI Sylvan Pools, Inc.*, 981 F.2d 107, 117 (3d Cir. 1992) (citing *Vattimo v. Lower Bucks Hosp., Inc.*, 465 A.2d 1231, 1235 (1983) ("Recovery for legal process damages flowing from such a breach of duty is recognized, moreover, by the Restatement of Torts, Second § 914(2).").

[25] *Boiler Eng'g & Supply Co. v. Gen. Controls, Inc.*, 443 Pa. 44, 45 (1971).

[26] *Fleck*, 981 F.2d 107, 117 (3d Cir. 1992).

party," held that "the parties' arguments provide no assistance to the Court in evaluating whether Pennsylvania actually recognizes a claim."[27] More recently, a 2015 Eastern District of Pennsylvania decision collecting § 914(2) cases concluded that "[c]ases applying Pennsylvania law confirm the common-sense interpretation that Section 914 describes a measure of damages available to compensate a tort plaintiff who brings a cause of action based on fraud, indemnification, or the breach of another duty owed to the plaintiff."[28] All of the "indemnification" cases cited by the court in that case recognized § 914(2)'s application only where the indemnitee had previously defended against a third-party action prior to its suing the indemnitor directly.[29]

As to § 914(2)'s use as a sword rather than a shield, the commentary to that provision of the restatement supplies the following scenario in which such application may be appropriate:

> A, who is B's agent, collects money due from C to B. Later A represents to B that C did not pay him and B brings suit against C for the amount supposed to be due. B can recover from A the expenses of suit as well as the amount received by A.

No facts resembling that illustration exist here.

---

[27] *Johnson Controls, Inc. v. Wachovia Bank, NA*, 2011 WL 4923299, at *5 (E.D. Pa. Oct. 17, 2011).

[28] *In re Skinner*, 532 B.R. 599, 608 (E.D. Pa. 2015) (Baylson, J.), *aff'd*, 636 F. App'x 868 (3d Cir. 2016) (Smith, J.).

[29] *See id.* (citing *Fleck,* 981 F.2d at 117; *Barry–Wehmiller Design Grp., Inc. v. Storcon Sys., Inc.,* 2014 WL 4852831, at *2 (M.D.Pa. Sept. 24, 2014); *Treco, Inc. v. Wolf Investments,* 2001 WL 1807762, at *4 (Pa.Com.Pl. Feb. 15, 2001)).

Seeming to recognize their strained position, Plaintiffs sprinkle § 914(2)'s "buzz words" throughout their papers. They note, for instance, that they "needed counsel to protect their interests" and incurred $100,000 in attorney's fees while "defending themselves against Erie's Arson investigation."[30] Such linguistic gymnastics tend to suggest Plaintiffs' awareness of the tenuousness of their position and nevertheless are insufficient to trigger § 914(2) as applied by Pennsylvania state courts.

In my view, this matter is analogous to *Guadagnini v. LaGioia*. In that case, the retaining wall on the plaintiffs' property collapsed as a consequence of a defective sewer line installed by Lower Marion Township, the township where it was located.[31] The collapse damaged nearby railroad tracks owned by Consolidated Rail Corp.[32] The defendants in *Guadagnini* were insurers who failed to obtain for plaintiffs insurance coverage for damage to paved surfaces and retaining walls, as the plaintiffs had expressly requested.[33]

Prior to the filing of the *Guadagnini* action between the property owner and the insurers, the property owners and Lower Marion Township were sued by

---

[30] ECF No. 49 at 6. ECF No. 50 at 11.
[31] 1996 WL 431830, at *1 (E.D. Pa. July 31, 1996).
[32] *Id.*
[33] *Id.*

Consolidated Rail.[34] In that earlier action, the property owners filed a cross-claim against Lower Marion Township.[35] The parties reached a settlement agreement, from which the property owners received approximately $97,000.00.[36]

Thereafter, in the *Guadagnini* action before the United States District Court for the Eastern District of Pennsylvania, the property owners sought from the insurers "attorney fees, expert witness fees, and other costs they incurred in the Conrail suit."[37] The plaintiffs argued that fees and costs were recoverable under § 914(2) because the defendants' actions "have caused [them] to be involved in litigation with others."[38]

That position was unavailing, the *Guadagnini* court explained, because "the case law in this jurisdiction limits the application of § 914(2) to actions on the insurance contract for failure to provide a defense."[39] Contrary to plaintiffs' argument, the court collected authorities demonstrating that "the great weight of the case law" limits § 914(2) to "recovery of attorneys' fees and costs incurred in underlying defense litigation."[40]

---

[34] *Id.* at *2.
[35] *Id.*
[36] *Id.*
[37] *Id.*
[38] *Id.* at *5.
[39] *Id.*
[40] *Id.* (citing *Fleck v. KDI Sylvan Pools, Inc.*, 981 F.2d 107, 117 (3d Cir. 1992)).

Further, courts interpreting § 914(2) have emphasized that fees attributable to prior litigation against a third-party are recoverable against a defendant only if they were "the natural and necessary consequences" of the defendant's actions.[41] This requires that the earlier action's subject matter "must have been the tortfeasor's tortious conduct,"[42] and that conduct "must have been 'the legal cause of the action.'"[43]

With that in mind, I note that Plaintiffs' Complaint itself here casts the coverage dispute largely as one of Erie's own making, noting that "[a]t the time of the fire," Erie "believed that the fire was a result of arson by the Hoffmans."[44] Their brief strikes the same cord:

> Erie focused its lengthy investigation of the Hoffmans as though the fire was intentionally set. . . . The reason for the lengthy investigation was Erie's suspicion that Mr. Hoffman intentionally set the fire, and therefore, the investigation focused solely on determining if the fire was arson, which would not be covered under the homeowners' insurance policy. Erie's entire investigation of the claim was focused on attempting to prove that the Hoffmans intentionally set the fire.[45]

Given the shaky foundation that Pennsylvania law supplies as to § 914(2)'s offensive use, I find that the connection between Champion's alleged liability and

---

[41] *In re Skinner*, 519 B.R. at 620 (quoting *Travelers Cas. and Sur. Co. v. Dormitory Authority–State of New York,* 734 F.Supp.2d 368, 386 (S.D.N.Y.2010)).

[42] *In re Skinner*, 519 B.R. at 620.

[43] *Id.* at 620–21; *Corace v. Balint et al.,* 210 A.2d 882, 888 (1965) (lawsuit "which gave rise to the expenditure of counsel fees must have been proximately caused").

[44] ECF No. 1, Ex. 1, at ¶ 8.

[45] ECF No. 50 at 8–9.

the Hoffmans' dispute with Erie is far too tenuous to permit me to disregard an established procedural norm like the American Rule.[46] That Plaintiffs incurred the expense associated with representation was wholly within their purview. The contours of the resulting subject fee agreement and the decision to forego formal coverage or bad faith claims against Erie were both reserved to the discretion of counsel for Plaintiffs and his clients. They should bear the consequences of those decisions, whether favorable or not. Summary judgment is therefore granted on this claim for damages in the form of attorney's fees, expert fees, and the attendant costs of Plaintiffs' dispute with Erie.

### B. Plaintiffs May Not Recover Depreciation Loss Associated With The Destruction Of Their Home.

The parties next debate whether Plaintiffs may recover "depreciation loss associated with the destruction of the house."[47] It is not clear to the Court that the parties are referring to the same measure of damages when they each use the word "depreciation." In employing that term, Plaintiffs seem to unnaturally stretch its meaning to include compensation for the full market value of the property, or as

---

[46] In a footnote, Plaintiffs point out that they have also stated a claim for fees and costs under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310. To the extent that fees are available under that products liability statute, unlike § 914(2), that Act is not a means for the derivative assessment of fees from a different action. *See De Lage Landen Fin. Servs., Inc. v. Miramax Film Corp.*, 2009 WL 678625, at *2 n.2 (E.D. Pa. Mar. 16, 2009) ("It is important here to distinguish between attorneys' fees qua attorneys' fees and attorneys' fees as a measure of fraud damages. It is the latter which is permitted as compensation under § 914(2), and which is at issue here.").

[47] Compl. at ¶ 31(a).

they put it: "full[ ] compensate[ion] by Erie for the damage to their property."[48] That construction is contrary to their prayer for relief, which clearly restricts their claim to "*depreciation* loss associated with the destruction of the house."[49] Champion, however, focuses its motion on "depreciation" costs to mean "the difference between actual cash value or fair market value and replacement costs."[50]

Champion's construction of "depreciation" is the correct one, and the law further supports its position as to non-recoverability. In *Arch Insurance Co. v. Carol & Dave's Roadhouse, Inc.*, the Honorable D. Brooks Smith, writing for the Third Circuit, affirmed a district court's decision in a case involving a structure fire to limit the plaintiff's recovery "to the fair market value of the building instead of its replacement cost."[51] The *Arch Insurance* court explained that "Pennsylvania law is clear that . . . where the injury is characterized as permanent [as when a building is completely destroyed], the measure of damages becomes the decrease in the fair market value of the property."[52] To that end, it noted that "[r]epair and

---

[48] *See* ECF No. 50 at 17–18. The underlying argument, that Erie's adjusters did not properly value the home and that the Hoffmans' self-serving statements are significantly more probative, is a difficult one to fathom nonetheless. *See, e.g.*, *Columbia Gas Transmission, LLC v. 101 Acres*, 2016 WL 6248071, at *6 (M.D. Pa. Oct. 26, 2016) (Brann, J.) (finding that property valuation testimony "lies solely within the domain of the parties' experts and are properly excluded from lay testimony" and therefore excluding "testimony referencing prior valuations or appraisals, which fall within the purview of the rule against hearsay").

[49] ECF No. 1, Ex. 1, at ¶ 31(a) (emphasis added).

[50] ECF No. 51 at 4.

[51] 567 F. App'x 131, 134 (3d Cir. 2014).

[52] *Id.* (quoting *Babich v. Pittsburgh & New England Trucking Co.*, 563 A.2d 168, 170 (1989)).

replacement costs are irrelevant when the damage is permanent, only the reduction in market value can be considered."[53]

That determination enjoys a sound footing in Pennsylvania law. In particular, in *Wade v. S.J. Groves & Sons Co.*, the Superior Court summarized that "[i]t is well-settled law in this Commonwealth that the measure of damages for injury to property is the cost of repairs where that injury is reparable; however, where the injury is characterized as permanent, the measure of damages becomes the decrease in the fair market value of the property."[54]

Moreover, federal courts applying Pennsylvania law have since confirmed that claimants "are generally limited to the fair market value of a building in recovering remediation damages."[55] Thus, in the case of permanent damage, "the general measure of damages for permanent harm to real property is the diminution in market value attributable to the conduct, product, or instrumentality giving rise to liability."[56] As this Court has previously explained, the Supreme Court of Pennsylvania has "clearly distinguished" between market value and actual

---

[53] *Arch Insurance*, 567 F. App'x at 134 (quoting *Babich*, 563 A.2d at 170).

[54] 424 A.2d 902, 911 (1981).

[55] *Steffy v. The Home Depot, Inc.*, 2009 WL 904966, at *18 (M.D. Pa. Mar. 31, 2009) (Kane, C.J.).

[56] *Vassell v. Travis*, No. CIV.A. 04-1313, 2007 WL 2571634, at *2 (E.D. Pa. Aug. 31, 2007).

cash value: "the actual cash value is to be *diminished* by depreciation."[57] Thus, to the extent that fair market value takes depreciation into account, it does so only for the purpose of "determining the price that willing buyers and sellers would assign to the property."[58]

Last, this Court is not blind to the economics underlying Plaintiffs' insurance settlement and their decision to initiate this suit. In particular, if Plaintiffs were dissatisfied with—or thought it appropriate to contest—Erie's calculations as to depreciation, actual cost value, or the policy limits, those actions would seem to be more appropriately: (1) directed at Erie's appraisal decisions, (2) prior to or shortly after the time the insurance settlement was disbursed. Instead, the record reveals a somewhat striking lack of understanding as to those calculations on Plaintiffs' parts. For instance, Mr. Hoffman testified as follow:

> Q. Do you know—other than looking at this document, do you know what Erie paid you?
>
> A. No. Because everything went to Dean, and then he dispersed it.[59]

Accordingly, summary judgment is appropriate as to this claim for damages.

---

[57] *Penn Nat. Ins. v. HNI Corp.*, No. 1:05-CV-2096, 2007 WL 2907542, at *3 (M.D. Pa. Oct. 3, 2007) (Jones, J.) (emphasis added).

[58] *Id.*

[59] James Hoffman Dep. ECF No. 42, Ex. 5, at 85:19–22.

### C. Plaintiffs Cannot Recover Damages For Emotional Distress As A Consequence Of Property Damage.

Plaintiffs seek emotional damages relating to their property loss. In particular, they note that Mr. Hoffman was asleep in his home when the fire started, and had it not been for his dog who barked to alert him of the fire, he "possibly could have" been personally injured.[60] Plaintiffs impliedly concede that neither of them was physically injured during the blaze—in fact, Mrs. Hoffman was not even home at the time.[61]

In its 2006 decision *Mest v. Cabot Corp.*, the Third Circuit expressly rejected Plaintiffs' precise argument, holding as follows:

> We agree with the District Court that Pennsylvania law permits recovery for emotional distress as a result of the defendant's negligence only where the claim includes physical injury or in limited circumstances where the plaintiff witnesses injury to another.

---

[60] ECF No. 50 at 21.

[61] ECF No. 49 at ¶ 6. Plaintiffs' response to Champion's statement of material fact on this point is non-responsive and unnecessarily evasive. Plaintiffs deny the contention regarding the absence of physical injuries before launching into a detailed recounting of Mr. Hoffman's having willfully reentered his burning home upwards of three times to save several family pets. Plaintiffs readily admit that Mr. Hoffman "did not seek immediate medical attention as the result of the fire for burns or smoke inhalation." However, they aver that "Mr. Hoffman testified that he has had lingering effects from the fire which have manifested themselves as physical symptoms." That assertion is vague and ambiguous, and is unsupported by citations to the record indicating such physical symptoms. Although Plaintiffs rather bluntly assert that Mr. Hoffman suffers from "depression, anxiety, sleeplessness, headaches, and bouts of crying," the subject of this action is limited to negligence/strict liability resulting in property damage—negligent infliction of emotional distress, on the other hand, to which Plaintiffs' "zone of danger" proposed test most properly relates, has not been pled and would likely not be appropriate here. Accordingly, pursuant to Local Rule 56.1, it is deemed admitted that "neither Plaintiff sustained any physical injury in the fire."

Pennsylvania law does not allow for recovery for emotional distress damages resulting from a defendant's negligent injury to property.[62]

Undoubtedly, a conflagration in one's own home is an unsettling experience, and this Court is glad that Mr. Hoffman escaped the ordeal unscathed. However, the Third Circuit has made clear that, absent personal injury, claimed emotional trauma is not recoverable merely as a consequence of injury to one's property. The reason is straightforward: the opposite rule would engender a flood of litigation every time a tort claim involving personal property was advanced. Summary judgment is therefore granted as to this claim for Mr. Hoffman's "emotional damages."

### D. Plaintiffs Cannot Recover Damages On Mrs. Hoffman's Derivative Loss Of Consortium Claim.

Finally, Plaintiffs' plead a claim of loss of consortium on Mrs. Hoffman's behalf. According to Mrs. Hoffman, "her husband does not go to social events with her anymore, does not take walks with her, does not sleep with her anymore due to his insomnia, and is unwilling to help around the house."[63] In addition, "her sexual relationship with her husband has decreased in both frequency and quality since the fire, which has greatly affected her and causes her pain and suffering."[64]

---

[62] 449 F.3d 502, 519 (3d Cir. 2006) (Fuentes, J.). *See also Brooks v. Hickman*, 570 F. Supp. 619, 620 (W.D. Pa. 1983) (granting motion to dismiss where alleged "negligent acts do not involve any physical impact—actual, threatened or vicarious").

[63] ECF No. 50 at 23.

[64] *Id.*

Under Pennsylvania law, it is "well settled" that a loss consortium claim is "derivative, emerging from the impact of one spouse's physical injuries upon the other spouse's marital privileges and amenities."[65] "Because the nature of a loss of consortium claim involves damages for lost 'services,' recovery is limited to cases in which the plaintiff's spouse suffers injury of a *personal* nature . . . . In fact, no court construing Pennsylvania law has permitted recovery on a loss of consortium claim based solely on *pecuniary* injuries to the plaintiff's spouse, and Pennsylvania courts will not likely extend the law of consortium to that extent."[66]

Accordingly, because it is my determination that Mr. Hoffman did not sustain a viable personal injury as a matter of law, summary judgment is also warranted as to Mrs. Hoffman's derivative loss of consortium claim.

## IV. CONCLUSION

In accordance with the foregoing reasoning, Champion's motion for summary judgment is granted. However, because there remaining existing claims for damages and liability has not been determined, the case shall remain open.

An appropriate Order follows.

---

[65] *Darr Construction Co. v. W.C.A.B. (Walker)*, 715 A.2d 1075, 1080 (1998).
[66] *Dugan v. Bell Tel. of Pennsylvania*, 876 F. Supp. 713, 728 (W.D. Pa. 1994).

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge